IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KIMBERLY D. HILL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CIV-23-273-GLJ ) |
| MARTIN O'MALLEY,[1] Commissioner of the Social Security Administration, | ) ) ) ) |
| Defendant. | ) ) |

# OPINION AND ORDER

Claimant Kimberly D. Hill requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if [her] physical or mental impairment or impairments are of such severity that

---

[1] On December 20, 2023, Martin J. O'Malley became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. O'Malley is substituted for Kilolo Kijakazi as the Defendant in this action.

1

[she] is not only unable to do his previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether the correct legal standards were applied. *See Hawkins v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairments *are not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show that there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). Instead, the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, U.S. 474, 488 (1951). S*ee also Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was fifty-eight years old at the time of the administrative hearing. (Tr. 34, 180). She completed high school and worked as a shoe salesperson and composite postal service person. (Tr. 33, 56-57, 207). Claimant alleges an inability to work since February 5, 2020, due to arthritis, anxiety, depression, chronic radicular cervical pain, degenerative arthritis of cervical spine, chronic maxillary sinusitis, bilateral plantar fasciitis, cervical spine disorder, osteoarthritis, lumbar spine disorder, and bursitis left hip. (Tr. 206).

## Procedural History

On September 27, 2021, Claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied initially and upon reconsideration. Administrative Law Judge ("ALJ") Elisabeth McGee conducted an administrative hearing and determined that Claimant was not disabled in a written decision dated January 9, 2023. (Tr. 10-22). The Appeals Council denied review, so the ALJ's opinion represents the Commissioner's final decision for the purpose of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made her decision at step four of the sequential evaluation. At step two, she determined that, between February 5, 2020 and her date last insured ("DLI") of

3

December 31, 2021, Claimant had the severe impairments of mild degenerative disc disease of the lumbar spine, minimal degenerative disc disease of the cervical spine, mild degenerative disc disease of the thoracic spine, bilateral ulnar sensory neuropathies, obesity, and dizziness, as well as the nonsevere impairments of headaches, left ankle fracture with later minimal degenerative joint disease, right foot spurs, plantar fasciitis, gastric equinus bilaterally, and depression. (Tr. 12-13). Additionally, the ALJ notes Claimant's post-DLI diagnosis of multiple sclerosis, noting that the symptoms of dizziness, pain, numbness, and balance issues could be attributed to this impairment prior to the DLI. (Tr. 13). At step three, she determined Claimant did not meet any Listing. (Tr. 15). At step four she found Claimant had the RFC, prior to her DLI of December 31, 2020, to perform light work as defined in 20 C.F.R. § 404.1567(b), *i.e.*, except she could only frequently bilaterally overhead reach, push and pull, and handle and finger. Additionally, she found Claimant could never climb ladders/ropes/scaffolds, and she must avoid exposure to unprotected heights, moving mechanical parts, deep water, and open flames. (Tr. 27). The ALJ then concluded that Claimant was not disabled because she could return to her past relevant work as a shoe sales person, as actually and generally performed, and the combined job of mail handler, as generally but not as actually performed. (Tr. 21).

## Review

Claimant's sole contention of error is that, even though she was diagnosed with multiple sclerosis after her DLI of December 31, 2020, the ALJ nevertheless failed to account for symptoms of this condition prior to the DLI. The Court finds this contention unpersuasive for the following reasons.

The medical evidence in the record relevant to this appeal reflects that, in the year prior to Claimant's February 2020, alleged onset date, Claimant underwent an MRI of her neck in May 2019, which showed should no significant abnormality despite continued radicular symptoms. (Tr. 399). An October 2019 x-ray of the shoulder was negative. (Tr. 376). A December 4, 2019, nerve conduction study showed bilateral ulnar sensory neuropathies (Tr. 469), and a December 5, 2019, treatment note specifically stated that she had no falls in the past year and had a normal range of motion, but she experienced tingling in her hands associated with neck pain. (Tr. 361, 364).

Claimant had a fall in January 2020, the month before her February 5, 2020, alleged onset date. (Tr. 351). She was assessed with neck pain and an intractable acute post-traumatic headache. (Tr. 353-354). A February 6, 2020 CT of the head showed stable mild degenerative change, with no acute abnormality. (Tr. 464). An MRI of the brain on February 26, 2020 showed no post-traumatic findings, but did show numerous punctate foci of increased FLAIR signal in the white matter bilaterally, which was not the typical distribution for change of small vessel disease or for demyelinating plaques of multiple sclerosis, and none of these enhanced or demonstrated restricted diffusion. Additionally, the MRI showed changes of bilateral chronic maxillary sinusitis and an acute left maxillary air-fluid level. (Tr. 459).

Within the relevant time period Claimant reported dizziness and loss of balance, but was negative for weakness and headaches. (Tr. 310). Treatment records list her "active problems" as including chronic neck pain, degenerative joint disease of the cervical spine, and depression. (Tr. 315, 321, 339). Chiropractic notes after April 8, 2020, going through

November 11, 2021, state that each time Claimant showed more improvement. (Tr. 524-549). On June 11, 2020, Claimant presented to the hospital with a report of right-side back or flank pain after mowing the lawn, but she had a normal range of motion. (Tr. 323-325). A CT scan the next day of the thoracic and lumbar spine show mild multilevel discogenic and facet degeneration, but no fractures. (Tr. 326). As for her ability to walk, she had an early heel lift of bilateral feet, but a normal base of gait that was slightly antalgic in nature. (Tr. 345).

A CT scan of the head was performed on December 10, 2020, showing mild hypodensity in the periventricular white matter and right frontal white matter, as well as a small retention cyst or polyp in the posterior left maxillary sinus, but no mass or acute infarct change. (Tr. 443).

On September 20, 2021, Claimant underwent another MRI of the brain which showed subcortical white matter lesions of uncertain etiology which were small and nonspecific but could not rule out demyelinating disease. (Tr. 579). Based on this, a multiple sclerosis panel 2 test was collected on November 24, 2021, and evidence of increased synthesis of IgG provided support for an MS diagnosis. (Tr. 601-601). The MRI follow-up treatment note states Claimant had a two-year history of left-sided numbness, balance disturbance, and an abnormal MRI and abnormal CSF most consistent with multiple sclerosis. She was diagnosed with MS and placed on medication management. (Tr. 560-563). Even at the time of her MS diagnosis and after, treatment notes as far out as March 2022 reflect Claimant had full grip strength, and had a normal, narrow-based gait

without ataxia, but she was unable to tandem walk and had postural instability with turning. (Tr. 562-563, 901).

State reviewing physicians found initially and on reconsideration that there was insufficient evidence to rate this claim. (Tr. 93, 100).

In her written opinion at step two, the ALJ notes, as stated above, Claimant's post-date-last-insured diagnosis of multiple sclerosis, opining that her symptoms of dizziness, pain, numbness, and balance issues likely are related to that later diagnosis and stating that the RFC accounts for these symptoms as they existed prior to the DLI. (Tr. 13). At step four, the ALJ thoroughly summarizes Claimant's hearing testimony as well the medical evidence in the record, including evidence both prior to the alleged onset date in February 2020 and after the DLI in December 2020. (Tr. 16-19). Specifically, the ALJ summarizes the objective test findings from 2012 through 2019 consisting of MRIs, x-rays, and nerve conduction studies, and noting the record reflects several years of complaints related to neck pain, spasms, bilateral shoulder pain, and numbness, with largely (though not entirely) normal exam findings related to gait, strength and tenderness. Additionally, she notes decreased range of motion of the neck and right shoulder on occasion. (Tr. 16-17). The ALJ then detailed the records beginning January 2020, noting Claimant's fall and subsequent treatment, including the CT scan and MRI from February 2020 that included findings that the results were "not the typical distribution for change of small vessel disease or for demyelinating plaques of multiple sclerosis." (Tr. 17, 459). Additionally, the ALJ notes Claimant's June 2020 CT scan of the lumbar and thoracic spine and the assessment of acute cystitis without hematuria, and the December 2020 treatment for dizziness after

which a CT scan showed no acute abnormality. (Tr. 17-18). The ALJ then notes Claimant's 2021 treatment for dizziness that was attributed to multifactorial causes, as well as continued treatment with a podiatrist, which included notes reflecting an antalgic gait from discomfort in arches and heels. (Tr. 18). Finally, she notes Claimant received post-DLI diagnoses, including multiple sclerosis confirmed by the October 2021 lumbar puncture. (Tr. 19).

Turning to the analysis, the ALJ found that the claimant's statements regarding her impairments were not consistent with the medical records which had a history of conservative treatment, generally mild findings, and no notable complications or hospitalizations. (Tr. 19). She notes exams were generally remarkable and finds the record as a whole did not demonstrate progressive worsening of her symptoms, including that the dizziness waxed and waned, lack of regular falls, no use of assistive devices for walking (other than the boot to treat her foot after her one reported fall), and no significantly altered gait or balance prior to the DLI. (Tr. 19). The ALJ then found that Claimant should be limited to light work to prevent exacerbation of neck, back, and other pain, as well as to account for an increased BMI; that she was limited to frequent overhead reaching, frequent bilateral pushing and pulling, and frequent bilateral handling and fingering due to upper extremity symptoms including numbness, pain, stiffness, and neck pain; and that she was unable to climb ladders/ropes/scaffolds or be around unprotected heights, moving mechanical parts, deep water, or open flames, due to episodic dizzy spells and balance problems. (Tr. 20). She further cites Claimant's activities of daily living as supportive of this RFC, as well as pain that appeared to generally be controlled with prescription

medications, chiropractic appointments, and other conservative treatment. (Tr. 20). She notes she considered the state reviewing physician opinions finding insufficient evidence to rate Claimant's claim but found that hearing level evidence supported the above-listed RFC. (Tr. 21). She then concludes Claimant could return to her past relevant work and was therefore not disabled. (Tr. 21-22).

An RFC has been defined as "what an individual can still do despite his or her limitations." Soc. Sec. R. 98-6p, 1996 WL 374184, at *2 (July 2, 1996). It is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* This includes a discussion of the "nature and extent of" a claimant's physical limitations including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)." 20 C.F.R. §§ 404.1545(b), 416.945(b). Further, this assessment requires the ALJ to make findings on "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" and to "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Soc. Sec. R. 98-6p, 1996 WL 374184, at *1, 7. Here, the ALJ has fulfilled his duty. Claimant nevertheless asserts that the ALJ failed to properly evaluate the impact her post-DLI multiple sclerosis has on her RFC.

Claimant contends that the 2021 MRI confirming her multiple sclerosis is proof that it existed during the relevant time for this disability application, because evidence demonstrates she was suffering from a worsening of her multiple sclerosis symptomatology, asserting she had been medicated to slow the disease process and had to use assistive devices to ambulate.  She contends the ALJ recognized the 2020 CT and MRI showed evidence of multiple sclerosis, as well as the records showing dizziness and loss of balance in 2020.  Without supporting case law she asserts that denial of benefits is a "travesty of justice" because she was "suffering from the debilitating effects of MS long before the lumbar puncture confirmation of MS, and certainly during the [relevant] period of time."  Docket No. 12, pp. 4-5.  Defendant notes that Plaintiff's opening brief contains no supporting authority for her arguments, which should forfeit the appeal.  Defendant continues, however asserting that Claimant's multiple sclerosis was not a medically determinable impairment at step two for the relevant time period, but that the ALJ nevertheless accounted for any related symptoms in the RFC.

"[C]ursory statements, without supporting analysis and case law, fail to constitute the kind of briefing that is necessary to avoid application of the forfeiture doctrine." *Bronson v. Swensen*, 500 F.3d 1099, 1105 (10th Cir. 2007).  "A party forfeits an issue it does not support with 'legal authority or argument.'" *Eateries, Inc. v. J.R. Simplot Co.*, 346 F.3d 1225, 1232 (10th Cir. 2003) (quoting *Clark v. State Farm Mut. Auto. Ins. Co.,* 319 F.3d 1234, 1244 (10th Cir. 2003)).  The Court finds Claimant wholly failed to support her arguments with any legal authority, and the ALJ's decision would be subject to

affirmance on that basis alone. Nevertheless, the Court proceeds to address the apparent argument of error out of an abundance of caution.

While she does not specify whether she is bringing a step two or step four arguments, the heart of Claimant's argument appears to be that her post-DLI diagnosis of multiple sclerosis means that she should automatically be considered disabled during the relevant time period. Claimant contends her symptoms were worsening from February 2020 through December 2020. In support, however, she misstates the record when she says the ALJ herself acknowledged the February 2020 CT and MRI scans show evidence of multiple sclerosis. The CT and MRI from February 2020 specifically state that, despite "numerous punctate foci of increased FLAIR signal in the white matter bilaterally," this was "*not the typical distribution* for change of small vessel disease or for demyelinating plaques of multiple sclerosis." (Tr. 459) (emphasis added). The ALJ cites this specific test and result. (Tr. 17). Additionally, the ALJ specifically found that the evidence did *not* show a worsening of symptoms during the relevant time period. (Tr. 19).

To receive social security benefits under Title II, Claimant must establish that she was disabled prior to the date she was last insured. "[T]he proffered evidence [must] relate to the time period for which the benefits were denied." *Hargis v. Sullivan*, 945 F.2d 1482, 1493 (10th Cir. 1991). "However, evidence of a claimant's condition after the termination of insured status may be relevant to the existence or severity of an impairment arising before termination." *Gill v. O'Malley*, 2024 WL 1193556, at *6 (E.D. Okla. Mar. 20, 2024). "[T]he relevant analysis is whether the claimant was actually *disabled* prior to the expiration of her insured status." *Potter v. Sec'y of Health & Hum. Servs.*, 905 F.2d 1346,

1348-1349 (10th Cir. 1990) ("None of these reports identify a *disability* as of 1981. Rather, they retrospectively diagnose the disease [of multiple sclerosis]."). "A retrospective diagnosis without evidence of actual disability is insufficient. This is especially true where the disease is progressive." *Id.* at 1349. Here, the Court finds "that there remains substantial evidence supporting the ALJ's decision,[] based on the difference between a retrospective diagnosis and a retrospective opinion of disability." *Johnson v. Astrue*, 2012 WL 2886687, at *8 (N.D. Okla. July 13, 2012). The ALJ clearly and thoroughly discussed all the evidence in the record, before, during, and after the relevant time period, including all the objective tests and results, ultimately finding that any related symptoms did not rise to the level of disability. Her opinion is therefore supported by substantial evidence. *See, e.g., Johnson v. Berryhill*, 679 Fed. Appx. 682, 687 (10th Cir. 2017) ("[T]he ALJ stated that he considered her symptoms to the extent they related back to the period of disability, but he nevertheless determined there was no impact on her RFC. Johnson disputes this conclusion, citing her sleep issues, fatigue, anxiety, and depression; however, the ALJ found that those impairments imposed only minimal limitations on her ability to work. And although Johnson's fibromyalgia may have manifested symptoms similar to these impairments, she cites no evidence that any pre-DLI symptoms impacted her RFC.") (citation omitted)); *Bruce v. Comm'r of Soc. Sec.*, 2022 WL 1555402, at *7 (N.D. Ohio May 17, 2022) ("[E]ven if it was *possible* that Bruce had multiple sclerosis in 2012 and 2013, the ALJ had insufficient evidence to find that the condition significantly limited Bruce's ability to perform basic work activities during the period under consideration."); *Schlicker v. Comm'r of Soc. Sec.*, 2011 WL 5865148, at *11 (E.D. Mich. Nov. 4, 2011),

("[E]ven assuming that Plaintiff was suffering from undiagnosed multiple sclerosis prior to the [DLI], the only pre-[DLI] manifestations of that disease were depression and dizziness. And thus, to the extent that Plaintiff's multiple sclerosis caused more than a minimal effect on Plaintiff's ability to do basic work activities, it did so by causing Plaintiff to be depressed and dizzy.") (citation omitted), *report and recommendation adopted*, 2011 WL 5865082 (E.D. Mich. Nov. 22, 2011). *Compare with Sipple v. Colvin*, 2016 WL 4414841, at *9 n.10 (D.S.C. July 29, 2016) ("Further, although Plaintiff's multiple sclerosis diagnosis may have come after his date last insured, his symptoms correlating to 'demyelinating process' were in the record as early as February 2007, prior to his date last insured. Plaintiff's MRI findings in April 2012 noted Plaintiff's diagnosis of demyelinating disease of the central nervous system remained unchanged since the February 2007 study, that potential new white matter lesions in the Pons may demonstrate mild enhancement, and that a demyelinating disease such as multiple sclerosis could account for these abnormalities. In any instance, the ALJ failed to explain whether he found Plaintiff's multiple sclerosis was present during the relevant time and/or whether symptoms after the relevant time period related back. Consequently, the Court cannot find that the ALJ's decision is supported by substantial evidence.") (internal citations omitted), *report and recommendation adopted*, 2016 WL 4379555 (D.S.C. Aug. 17, 2016).

Essentially, Claimant asks the Court to reweigh the evidence in her favor, which the Court cannot do. *See Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000) ("In conducting our review, we may neither reweigh the evidence nor substitute our judgment for that of the Commissioner.") (citing *Casias*, 933 F.3d at 800). The ALJ noted the medical record

available in this case, gave reasons for his RFC determination, and ultimately found that Claimant was not disabled. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (citing 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946). Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

The Court finds that the decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Accordingly, the decision of the Commissioner is AFFIRMED.

**DATED** this 29th day of July, 2024.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**